Present: Carrico, C.J., Compton,[*] Lacy, Hassell, Keenan, Koontz, and Kinser, JJ.

SULLY STATION II
COMMUNITY ASSOCIATION, INC.

OPINION BY
CHIEF JUSTICE HARRY L. CARRICO

v.    Record  No. 991078

March 3, 2000

REGINALD W. DYE, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jonathan C. Thacher, Judge

This case involves a dispute between Sully Station II Community Association, Inc. (the Association) and eight of its members, Reginald W. Dye, Lory L. Cournoyer, Joseph C. Mallon, Joyce A. Mallon, Steven M. Serio, Elizabeth A. Serio, Ellwood S. Crick, and Catherine M. Reese (the Complainants).  The dispute concerns a policy adopted by the Association's board of trustees with respect to parking in a common area of Section 8 of Sully Station II residential community in Fairfax County.  From a final decree declaring the policy void and unenforceable, we awarded the Association this appeal.  Finding that the trial court did not err in its declaration, we will affirm.

In their bill of complaint, the Complainants prayed for declaratory and injunctive relief establishing their right to use the common area for parking "on the basis of equality with other unit owners" in Section 8 of Sully Station II.  Following

---

[*] Justice Compton participated in the hearing and decision of this case prior to the effective date of his retirement on February 2, 2000.

the filing of the Association's answer and grounds of defense, the parties entered into Joint Stipulations of Fact, which revealed the following situation.

The Association is a non-stock corporation subject to the provisions of the Virginia Property Owners' Association Act, Code §§ 55-508 through -516.2.  The Association serves as a community association for the Sully Station II residential development.  The Association's executive body is its board of trustees, and the Association's governing documents include a Declaration of Covenants, Conditions and Restrictions (the Declaration) and a Supplementary Declaration of Covenants and Restrictions (the Supplementary Declaration), both of which were recorded among the land records of Fairfax County.

As the Association points out, the Declaration and the Supplementary Declaration "collectively represent a contract entered into by all owners" of townhouses in Section 8 of Sully Station II.  See Unit Owners Ass'n v. Gillman, 223 Va. 752, 766, 292 S.E.2d 378, 385 (1982).  As with other contracts, effect must be given to the intention of the parties.  Foti v. Cook, 220 Va. 800, 805, 263 S.E.2d 430, 433 (1980).  When the meaning of language in a contract is clear and unambiguous, as it is here, the contract needs no interpretation, and "[t]he intention of the parties must be determined from what they actually say and not from what it may be supposed they intended to say."

2

Carter v. Carter, 202 Va. 892, 896, 121 S.E.2d 482, 485 (1961). Finally, the meaning of a contract "is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties." Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983).

The Sully Station II development is comprised of a number of "sections" or "clusters." The present controversy involves Section 8 (Truitt Farm Cluster) of Sully Station II. Section 8 contains seventy-seven townhouses, thirty-eight with garages and driveways and thirty-nine without garages or driveways. The Complainants own townhouses in Section 8 with garages and driveways.

Included in Section 8 is a common area with ninety-four parking spaces. The parking lot is both "a 'Common Area' and a 'Cluster Common Area' as defined by the Declaration and Supplementary Declaration."

Prior to October 1, 1997, all common area parking spaces were on a first-come, first-served basis. Effective on that date, the board of trustees adopted a new parking policy that assigned two reserved parking spaces in the common area to each non-garaged townhouse. Under the new policy, no parking spaces were assigned to garaged townhouses, and the remaining spaces were "allotted for overflow and/or visitor parking on a first-come, first-served basis." As a result, seventy-eight of the

ninety-four parking spaces previously available in the common area on a first-come, first-served basis were reserved for the thirty-nine non-garaged townhouses and sixteen were left unassigned for use on a first-come, first-served basis.

The matter was heard below on the Association's motion for partial summary judgment and the Complainants' motion for summary judgment. The debate between the parties centered upon the question whether the Association's parking policy represented a licensing of a portion of the common area, as the Complainants contended, or a rule or regulation governing the use of the common area, as the Association contended. This question stemmed from the following language in Article IV of the Declaration:

> Section 2. Easement of Enjoyment.
>
> (a) Common Areas. Subject to the provisions herein, every Owner shall have a right and easement of enjoyment in and to the Common Area which shall be appurtenant to and shall pass with the title to every Lot . . . .
>
> (b) Cluster Common Areas. Subject to the provisions herein, and in addition to the right and easement of enjoyment in and to the Common Area provided in Article IV, Section 2(a) above, the Owners of Lots within a Cluster shall have a priority right and easement of enjoyment in and to the areas designated as Cluster Common Areas . . . .
>
> Section 3. Extent of Members' Easement. The Members' easement of enjoyment created hereby shall be subject to the following:
>
> . . . .

(e) The right of the Association to license portions of the Common Area to Members on a uniform, non-preferential basis.

(f) The right of the Association to establish rules and regulations to regulate the use of the Common Area for the benefit of Members.

In a memorandum filed in support of its motion for partial summary judgment, the Association made this concession:

The Association . . . concedes that the parking policy assigning two Common Area spaces to non-garage owners, and no assigned Common Area spaces to garage owners, does not treat the Owners on a 'uniform non-preferential basis.' Therefore, if the policy at issue represents the licensing of a portion of the Common Area, the parking policy would violate the Declaration . . . .

The trial court found in a letter opinion that the Association's parking policy resulted in "a licensing not on a uniform basis" of portions of the common area. In a final decree, the trial court granted the Complainants' motion for summary judgment and declared that the parking policy was "invalid and unenforceable . . . as being an ultra vires act in violation of the Declaration."

The Association contends that the trial court erred in finding that the parking policy in question was a license subject to the "uniform, non-preferential" language in Article IV, Section 3, Subsection (e), rather than a rule or regulation within the contemplation of Subsection (f). The Association says that the drafters of the Declaration "chose to omit any uniformity requirement in Subsection (f)," thus evidencing "the

5

specific intent to exclude any . . . limitation on the Association's broad power to adopt rules and regulations."  For this proposition, the Association cites <u>First National Bank v. Roy N. Ford Co.</u>, 219 Va. 942, 946, 252 S.E.2d 354, 357 (1979) (omission of particular covenant or term from contract reduced to writing shows intent to exclude it).

Furthermore, the Association states, "unambiguous provisions found elsewhere in the Declaration and the Supplementary Declaration" demonstrate the trial court's error in determining that "the Parking Policy was the licensing, not the regulating, of [the] Common Area."  In this connection, the Association cites Article III, Section 3 of the Declaration, which deals with the Association's board of trustees and provides in pertinent part as follows:

> (c) <u>Powers and Duties</u>.  Without limiting the generality thereof, the Board shall have the power and obligation to perform the following duties:
>
> . . . .
>
> (2) <u>Rule Making</u>.  To establish rules and regulations for the use of property as provided in Articles IV and VI . . . .

Article IV, mentioned in (2), is quoted <u>supra</u>.  It deals with the right of the Association to license portions of the common area "on a uniform, non-preferential basis" and to establish rules and regulations for the use of the common area.

6

Article VI, also mentioned in (2), provides in pertinent part as follows:

Section 1.  Protective Covenants.

. . . .

(d) Rules.  From time to time the Board of Trustees shall adopt general rules, including but not limited to rules to regulate potential problems relating to the use of property and the well-being of Members, such as . . . storage and use of all vehicles . . . .

The Association also cites Article IV of the Supplementary Declaration, which is titled "Parking" and provides as follows:

The Association shall promulgate such rules and regulations as needed to regulate the use of any parking areas that may be constructed or authorized on Cluster Common Area for the benefit of all Owners, which rules and regulations may include assignment of parking spaces.

Finally, the Association cites Article V, Section 3, of the Supplementary Declaration, which is titled "Protective Covenants" and provides in pertinent part as follows:

Vehicles.  Use and storage of all vehicles and recreational equipment upon the Common Area and Lots or upon any street, public or private, adjacent thereto shall be subject to rules promulgated by the Board of Trustees as provided herein.

The Association says that in all the provisions of the Declaration and Supplementary Declaration, reference to the authority of the board of trustees with respect to parking in common areas is "solely in the context of rules or regulations" and not licensing.  Hence, the Association concludes, the trial court's finding that the parking policy represented a licensing

7

of a portion of the common area "is simply contrary to the unambiguous language in both the Declaration and Supplementary Declaration showing that the drafters intended the assignment of parking spaces to be considered rules and regulations."

The Association also maintains that Virginia case law supports the proposition that the assignment of parking spaces, or the establishment of policies relating thereto, constitutes the exercise of regulatory power by a community association and not the granting of a license. Quoting Bunn v. Offutt, 216 Va. 681, 222 S.E.2d 522 (1976), the Association says a license is

> "a right, given by some competent authority to do an act which without such authority would be illegal, a tort, or trespass." 12 M.J., License to Real Property, § 2, p. 148. A license is personal between the licensor and the licensee and cannot be assigned.

Id. at 683, 222 S.E.2d at 525.[1]

The Association argues that its parking policy "did not provide 'competent authority' for anyone to park where it would otherwise have been 'illegal, a tort or a trespass' and, therefore, the Parking Policy is not a license." The Association then engages in the following hypothetical exercise:

---

[1] The Association also cites this Court's decision in Unit Owners Ass'n v. Gillman, 223 Va. 752, 292 S.E.2d 378 (1982), for the proposition that a policy with respect to the allocation of parking within common areas is the exercise of regulatory power by an association and not the granting of a license. However, the case did not involve the regulation-licensing dichotomy in any way.

8

Assume, arguendo, that a Mr. Smith owns a non-garaged townhouse in Section 8 and that, pursuant to the Parking Policy, the Association assigned two reserved parking spaces in front of his house to his lot. If the policy granted Mr. Smith a license, as the Trial Court found, under Bunn it would have had to have been illegal, a tort or a trespass for Mr. Smith to have parked in either of those two parking spaces prior to the adoption of the Parking Policy. However, Mr. Smith already had the right to park in those parking spaces prior to the Parking Policy because prior to any particular parking space being assigned to a particular non-garage townhouse, the space was available for parking for everyone on a first come, first served basis. . . . Therefore, since his lot's assigned parking space had previously been open to everyone, it certainly would not have been illegal, a tort or a trespass for Mr. Smith to have parked there.

Undoubtedly, it would not have been illegal, a tort, or a trespass for the hypothetical Mr. Smith to have parked in a common area parking space in front of his lot prior to the Association's adoption of the parking policy. But that begs the question. The real question is whether, prior to the adoption of the parking policy, it would have been legal for Mr. Smith to exclude his garaged townhouse neighbors from parking in the spaces now assigned to him, and that question must be answered in the negative. In other words, the parking policy was an act in the nature of a special privilege, entitling the owners of non-garaged townhouses to do something they would not have been entitled to do without the policy, i.e., to exclude the owners of garaged townhouses from the use of seventy-eight parking spaces in the common area. That is the very essence of a license, as the trial court indicated in its letter opinion and

9

is implicit from a reading of Bunn.  216 Va. at 683, 222 S.E.2d at 525.  And because the parking policy does not treat the owners on a uniform, non-preferential basis, as the Association has conceded, the policy is violative of the Declaration.

The Association cites the following out-of-state decisions which, it says, support its argument that the adoption by an association of a parking policy is the exercise of regulatory power and not the granting of a license:  Juno By the Sea North Condominium Ass'n v. Manfredonia, 397 So.2d 297 (Fla. Dist. Ct. App. 1980); Hidden Harbour Estates, Inc. v. Norman, 309 So.2d 180 (Fla. Dist. Ct. App. 1975); Alpert v. Le'Lisa Condominium, 667 A.2d 947 (Md. Ct. Spec. App. 1995);[2] Board of Managers of Surf East Condominium v. Cohn, 90 Misc.2d 1054, 396 N.Y.S.2d 999 (N.Y. City Ct. 1977).  The Complainants say these decisions are inapposite and actually "support [their] arguments."  We find the decisions unpersuasive.

For the reasons assigned, we will affirm the judgment of the trial court.

Affirmed.


JUSTICE COMPTON, with whom JUSTICE LACY joins, dissenting.

---

[2] Alpert has been overruled by the Court of Special Appeals of Maryland.  Sea Watch Stores v. Council of Unit Owners of Sea Watch Condominium, 691 A.2d 750, 759-60 (Md. Ct. Spec. App. 1997).

In my opinion, the Association's parking policy is a rule or regulation managing use of the common area, and is not a licensing of a portion of the area violative of the Association's governing documents.

Unambiguous language in these documents plainly indicates the intent of the drafters to treat actions by the Board of Trustees, in regard to parking, as rules or regulations, rather than licenses. For example, the Supplementary Declaration at Article IV, titled "Parking," states clearly that the "Association shall promulgate such <u>rules and regulations</u> as needed <u>to regulate the use of any parking areas</u> . . . which <u>rules and regulations</u> may include assignment of parking spaces." (Emphasis added.) This specific language refers to the assignment of parking spaces as "rules and regulations," not licenses, expressly recognizing the Board of Trustees' power to assign parking, and is consistent with the provisions of the governing documents as a whole.

Consequently, I would reverse the judgment below and dismiss the bill of complaint.

11