PRESENT:  All the Justices

RALPH WHITE, ET AL.

v.    Record No. 050417                          OPINION BY
                                      JUSTICE BARBARA MILANO KEENAN

BOUNDARY ASSOCIATION, INC.               January 13, 2006


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND JAMES CITY COUNTY
Samuel T. Powell, III, Judge


In this appeal, we consider whether a board of directors of a property owners' association was authorized by the Property Owners' Association Act, Code §§ 55-508 through -516.2 (POAA), and the terms of a declaration of covenants, conditions and restrictions, to assign parking spaces for the exclusive use of individual unit owners.

Ralph J. and Mary R. White (the Whites) are owners in fee simple of unit number nine in the Boundary, Inc. subdivision (the subdivision), which is situated at the intersection of North Boundary Street and Scotland Street in the City of Williamsburg.  The subdivision occupies 0.66 acres and is comprised of nine townhouses, which are each owned in fee simple, and a common area.  The common area includes sidewalks, plantings, a private one-way street through the subdivision, and parking spaces for 18 cars.

The individual properties and the common area of the subdivision are subject to a Declaration of Covenants, Conditions and Restrictions (the Declaration). This document establishes the rights and obligations of the owners of the nine properties, known collectively as the Boundary Association, Inc. (the Association). A board of directors (the Board), consisting of four officers elected by the owners, manages the business affairs of the Association. Article III, section 1 of the Association's bylaws authorizes the Board to "adopt such rules and regulations for the conduct of [its] meetings and the management of the corporation, as [it] may deem proper, not inconsistent with these by-laws and the laws of this State."

The Declaration directly addresses the subdivision's common area. Article I, section 4 of the Declaration defines "[c]ommon area" as "all real property owned by Boundary Association Inc. for the common use and enjoyment of the owners." Article II, section 1, titled "Owner's Easements of Enjoyment," states that

> [e]very owner shall have a right and easement of enjoyment in and to the Common Area which shall be appurtenant to and shall pass with the title to every lot, subject to the following provisions:
>
> (a) The right of Boundary Association Inc. to charge reasonable admission and other fees for the use of any recreational facility situated in the Common Area;
>
> (b) The right of Boundary Association Inc. to suspend the voting rights and right to use of the recreational facilities by an owner for any

2

period during which any assessment against his lot remains unpaid; and for a period not to exceed 60 days for any infraction of its published rules and regulations;

(c) The right of Boundary Association Inc. to dedicate or transfer all or any part of the Common Area to any public agency, authority, or utility for such purposes and subject to such conditions as may be agreed to by the members.

The Board issued two relevant sets of parking regulations concerning the subdivision's common area. One set of regulations, adopted in July 2003 (the July regulations), designated two parking spaces for each unit, thereby assigning all the parking spaces in the subdivision. The Board adopted another set of regulations in October 2003 (the October regulations), which approved the parking assignments established in the July regulations and permitted the assigned unit owners to have vehicles towed from their designated spaces.

Immediately following the Board's adoption of the October regulations, the Whites filed a motion for judgment in the circuit court against the Association. The Whites alleged that the Association exceeded its authority under the POAA and violated the explicit terms of the Declaration by adopting regulations that designated portions of the common area for the exclusive use of the various unit owners. The Whites sought a judgment declaring the parking regulations void and unenforceable, and that any allocation of portions of the common

3

area for the exclusive use of particular unit owners violated both the Declaration and the POAA.[1]  The Whites also sought reimbursement of their attorneys' fees.

The Association asserted various grounds of defense and affirmative defenses, including that the Whites had failed to state a claim upon which relief could be granted, and that the action was barred by the doctrines of waiver, estoppel, and laches.  The Association also requested payment of its attorneys' fees.

The Whites and the Association filed cross motions for summary judgment.  The circuit court held that the Association was authorized by both the Declaration and the POAA to promulgate rules governing use of the subdivision's common area. The court further held that the October regulations were adopted properly.  On this basis, the circuit court granted the Association's cross motion for summary judgment, denied the Whites' motion, and granted the Association's request for attorneys' fees.  The Whites appeal from the circuit court's judgment.

The Whites argue that the Association exceeded its authority under the POAA, which permits the adoption of common

---

[1] In their motion for judgment, the Whites challenged only the assignment of individual parking spaces.  Therefore, the validity of rules 3 through 7 of the October regulations is not before us.

area regulations under valid bylaws "except where expressly reserved by the declaration to the members." Code § 55-513(A). The Whites contend that Article II, section 1 of the Declaration contains such an express reservation by giving every owner "a right and easement of enjoyment in and to the [c]ommon [a]rea," and that the Association may restrict this right only under the three circumstances enumerated in the Declaration. The Whites further maintain that the Association's assignment of exclusive use and towing rights in designated parking spaces is effectively a licensing of the common area, a power not granted to the Association by the Declaration.

In response, the Association contends that neither the Declaration nor the terms of the bylaws limits the Board's authority with regard to "the management of the corporation." Therefore, the Association argues, the parking regulations were a proper exercise of the Board's authority under the bylaws to establish rules regarding the common area. We disagree with the Association's arguments.

We observe that the POAA contains certain provisions applicable to the use of common areas managed by a property owners' association. Code § 55-513(A) states that a board of directors "shall have the power to establish, adopt, and enforce rules and regulations with respect to use of the common areas and with respect to such other areas of responsibility assigned

5

to the association by the declaration, except where expressly reserved by the declaration to the members." Because the statute is unambiguous, we apply its terms in accordance with the plain meaning expressed. Woods v. Mendez, 265 Va. 68, 74-75, 574 S.E.2d 263, 266-67 (2003); Vaughn, Inc. v. Beck, 262 Va. 673, 677, 554 S.E.2d 88, 90 (2001).

We also consider the terms of the Declaration, which constitutes the contract collectively entered into by all the unit owners in the subdivision. See Sully Station II Cmty. Ass'n, Inc. v. Dye, 259 Va. 282, 284, 525 S.E.2d 555, 556 (2000); Unit Owners Ass'n v. Gillman, 223 Va. 752, 766, 292 S.E.2d 378, 385 (1982). We determine the meaning of the contract from its related provisions that reflect the unitary expression of the parties' agreement. Sully Station II, 259 Va. at 284, 525 S.E.2d at 556; First American Title Ins. Co. v. Seaboard Savings & Loan Ass'n, 227 Va. 379, 384, 315 S.E.2d 842, 845 (1984); Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983). When contract language is plain and unambiguous, as it is in the present Declaration, we determine the intent of the parties from the words they actually expressed. See Virginia Elec. & Power Co. v. Northern Virginia Reg'l Park Auth., 270 Va. 309, 316, 618 S.E.2d 323, 326 (2005); Sully Station II, 259 Va. at 284, 525 S.E.2d at 556; Dominion Sav. Bank v. Costello, 257 Va. 413, 416-17, 512 S.E.2d 564, 566 (1999).

6

The Declaration expressly granted each unit owner an easement of enjoyment in the common area.  Each unit owner, as a dominant tenant, acquired an indefeasible right to enjoyment of the common area that, under the plain terms of the Declaration, was subject to change only under the three stated circumstances or by a vote of 65 percent of the unit owners.[2]

These provisions in the Declaration render invalid any rule or regulation adopted under the bylaws that has the effect of divesting the unit owners of property rights granted in their easements.  Thus, we must determine whether the present parking policy effectively divests the unit owners of such property rights.

We previously considered a mandatory parking policy of a property owners' association in Sully Station II.  There, an association was authorized by its declaration to "license portions of the [c]ommon [a]rea to [m]embers on a uniform, non-preferential basis."  259 Va. at 285, 525 S.E.2d at 557.  The association's board of trustees adopted a parking policy that assigned two reserved spaces in the common area to each unit that did not have a garage.  Those units with garages did not receive any assigned parking spaces.  As a result, 78 of the 94 parking spaces that earlier were available to all unit owners

_____

[2] The Declaration states that it could be amended by a vote of 80 percent of the unit owners through May 21 2000, and,

7

were then reserved for the exclusive use of owners of units that did not have garages. Id. at 285, 525 S.E.2d at 556-57.

The property owners' association in Sully Station II argued that its action was valid and enforceable because the community's supplementary declaration authorized the board of trustees to issue rules and regulations for the assignment of parking spaces. Id. at 287-88, 525 S.E.2d at 558. We explained that the challenged parking policy effected a licensing of the common area by entitling certain unit owners to exclude other owners from using portions of the common area. Id. at 289, 525 S.E.2d at 559. We held that the parking policy constituted a preferential licensing, which was prohibited under the terms of the declaration, because that policy conferred a special privilege on the owners of the units without garages.

In the present case, we likewise conclude that the Board's parking policy confers a license on the individual unit owners, granting a special privilege permitting them to exclude others from using assigned portions of the common area. Because the Declaration does not authorize the Board to license portions of the common area, the Board was not permitted to obtain the same result by a rule or regulation that effectively divested the unit owners of access to certain portions of the common area included in their easement of enjoyment. Therefore, we hold

thereafter, by a vote of 65 percent of the unit owners.

that the parking policy is invalid because it effectively, and without authority, divested the unit owners of a property right granted in the Declaration that "run[s] with and bind[s] the land."[3]

In reaching this conclusion, we recognize that the POAA permits a property owners' association to adopt and enforce "rules and regulations with respect to use of the common areas." Code § 55-513(A). However, this statutory authority is subject to a significant limitation, namely, a declaration's express reservations of rights and privileges to the association members. Id. Here, as we have stated, the Declaration expressly reserved to each individual unit owner an "easement of enjoyment in and to the [c]ommon [a]rea" that was limited by only three conditions, none of which are applicable here. Thus, these easements could not effectively be changed under a bylaw giving the Board authority for "management of the corporation." Accordingly, we conclude that the Board's action imposing the parking policy exceeded its authority under the POAA.[4]

---

[3] We further note that the Declaration provides a mechanism for validly implementing parking regulations such as those adopted by the Board in this case. Licensing of the common area may be accomplished by Board action upon amendment of the Declaration by 65 percent of the unit owners expressly authorizing such licensing of that area.

[4] In holding in favor of the Whites, we also reject the Association's claim that it was entitled to summary judgment under Rule 3:12 because the Whites did not reply to the

9

Based on our conclusion that the Board exceeded its authority in adopting the parking policy, the circuit court's award of attorneys' fees and costs to the Board as the "prevailing party" under Code § 55-515(A) also was erroneous. The Whites are the prevailing parties under that statute and, as such, are "entitled to recover [the] reasonable attorneys' fees and costs expended" in prosecuting their claims. See, e.g., Westgate Condo. Ass'n v. Philip Richardson Co., 270 Va. 566, 578-79, 621 S.E.2d 114, 120-21 (2005) (when judgment serving as basis for statutory award of reasonable attorneys' fees to party prevailing at trial is reversed on appeal, party against whom award originally entered is deemed to be prevailing party and is entitled to recover reasonable attorneys' fees).

For these reasons, we will reverse the circuit court's judgment and enter final judgment in favor of the Whites declaring the parking policy void and unenforceable. We also will remand the case to the circuit court, pursuant to the Whites' request, for determination of an award of attorneys' fees allowed under Code § 55-515(A).

---

Association's allegation in its grounds of defense that the Board "properly adopted a parking rule and regulation effective October 9, 2003." Rule 3:12, which requires an adverse party to reply on request to a "new matter" contained in a plea, motion, or affirmative defense, is inapplicable here because, among other things, the "new matter" was asserted in the Association's general grounds of defense rather than in the portion of its pleading styled "Affirmative Defenses."

<u>Reversed,</u>
<u>final judgment,</u>
<u>and remanded</u>.