PRESENT:  All the Justices

MANCHESTER OAKS HOMEOWNERS
ASSOCIATION, INC.
                                            OPINION BY
v.    Record No. 111949           JUSTICE WILLIAM C. MIMS
                                       September 14, 2012
PATRICK K. BATT, ET AL.


               FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        Randy I. Bellows, Judge

     In this appeal, we consider whether a homeowners'

association violated its declaration when it assigned parking

spaces in a common area to lot owners on an unequal basis.  We

also consider whether an award of attorneys' fees to the

prevailing party in an action to enforce the declaration was

proper under Code § 55-515(A).

          I.    BACKGROUND AND MATERIAL PROCEEDINGS BELOW

     The Manchester Oaks subdivision encompasses 57 townhouses,

30 of which were constructed with a garage and driveway ("the

Garaged Lots") and 27 of which were constructed with an

additional bedroom and bathroom in lieu of a garage ("the

Ungaraged Lots").  The subdivision also includes a common area

with 72 parking spaces.

     The subdivision's developer incorporated the Manchester

Oaks Homeowners Association, Inc. ("the HOA").  Through a

Declaration of Covenants, Conditions and Restrictions ("the

Declaration") recorded in 1989 pursuant to the Property Owners'

Association Act, Code § 55-508 et seq., ("the Act"), the developer conferred certain rights and obligations on each lot owner and invested the HOA with certain powers and duties consistent with the Act.

Section 3.1 of the Declaration provides that "[e]very Owner shall have a right and easement of enjoyment in and to the Common Area, which shall be appurtenant to and shall pass with the title to each such Owner's Lot," subject to enumerated conditions.[1] One such condition, set forth in Section 3.1.7, reserved to the HOA "[t]he right . . . to establish rules and regulations governing the use of the Common Area, including the right set forth in Section 2.3.17 [sic] to establish rules and regulations governing the parking lots within the Common Area."[2] Section 2.3.18 specifically conferred on the HOA

> the right to designate a maximum of two parking
> spaces within the Common Area for the exclusive
> use of the Owner of each Lot; provided, however,
> that nothing herein shall require the [HOA] to
> make any such designations or to ensure that the
> parking spaces are available for the use of any
> particular Owner of a Lot, nor shall the [HOA] be

---

[1] While "Common Area" is a defined term in the Declaration, the definition merely describes the geographic territory set aside "for the common use and enjoyment" of the owners.

[2] The HOA's power to "make and enforce rules and regulations governing the use of parking areas within the Common Area" actually is set forth in Section 2.3.18. The parties agree that the reference to Section 2.3.17 in Section 3.1.7 was a scrivener's error.

required to supervise or administer the use of the parking lots located in the Common Areas.

Patrick K. Batt, Rudolph J. Grom, and James R. Martin, Jr., (collectively, "the Plaintiffs") each own a Garaged Lot. Batt and Grom each purchased their lots in 1990, before construction in the subdivision was complete. At that time, the roads were not finished or marked and residents parked wherever they chose. In either 1993 or 1994, the developer began marking some parking spaces in the common area as "reserved" and assigning two to each Ungaraged Lot. The remaining 18 parking spaces were designated as "visitor" parking.

Martin purchased his lot in 2006. Although he saw that the parking spaces were marked either "reserved" or "visitor," there was no indication of the purpose for which the spaces marked "reserved" were designated.

From the time the parking spaces were marked until 2009, visitor parking was available to all lot owners on a first-come, first-served basis. However, in June 2009 the HOA posted a visitor parking policy on its website. Under the policy, each lot owner received one visitor parking permit. Any vehicle not displaying a permit while parked in the spaces designated visitor parking would be towed.

In July 2009, the Plaintiffs filed a complaint in the circuit court seeking, among other things, a declaratory

judgment that the policy was invalid and permanent injunctive relief enjoining its enforcement. Thereafter, the HOA stipulated that it would no longer restrict each lot owner to one visitor permit, effectively restoring the status quo ante and reopening visitor parking to all lot owners on a first-come, first-served basis.

In December 2009, the HOA purportedly adopted an amendment to the Declaration ("the Amendment"). The Amendment added Section 1.16, which created the defined term "Reserved Common Area" and set forth its meaning as "a portion of the Common Area for which the Board of Directors of the [HOA] has granted a license to an Owner of a Lot in accordance with the terms of the Declaration." The Amendment also altered Section 2.3.18 to confer on the HOA

> the right to designate portions of the Common Area as Reserved Common Area, which includes the right to designate two parking spaces within the Reserved Common Area for the exclusive use of the Owner of each [Ungaraged Lot] on a non-uniform and preferential basis; provided, however, that nothing herein shall require the [HOA] to ensure that the parking spaces are available for the use of any particular Owner of a Lot, nor shall the [HOA] be required to supervise or administer the use of the parking lots located in the Common Areas.

The Amendment further added Section 3.1.10, vesting in the HOA's board of directors the power "to grant non-uniform licenses in the Common Area to an Owner of [an Ungaraged Lot] by designating

4

portions of the Common Area as Reserved Common Area . . .

includ[ing] the right to designate parking spaces for the

exclusive use of the Owners of [Ungaraged Lots] on a non-uniform

and preferential basis."

In June 2010, the Plaintiffs filed an amended complaint

alleging that the unequal treatment resulting from the HOA's

assignment of parking spaces only to Ungaraged Lots violated the

Declaration.  They also alleged that the individual members of

the HOA's board of directors had breached fiduciary duties owed

to them as members of the HOA, a non-stock corporation.  The

Plaintiffs sought only an award of compensatory damages for

breach of contract and breach of fiduciary duties, and an award

of costs, expenses, and attorneys' fees pursuant to Code § 55-

515(A).[3]  The HOA filed an answer asserting, among other things,

an affirmative defense that the Plaintiffs' claim was barred by

the Amendment.  The HOA subsequently reiterated its position in

a plea in bar.  In response, the Plaintiffs contended that the

Amendment was invalid because it had been improperly adopted.

Following a bench trial, the circuit court determined that

the Amendment was invalid on six grounds.  First, it effected a

---

[3] In contrast to the original complaint, the Plaintiffs did
not seek declaratory or injunctive relief in the amended
complaint.  In addition, the claims against the individual board
members for breach of fiduciary duties were subsequently
nonsuited.  Accordingly, the only claim before the circuit court
at trial was for breach of contract and the only relief sought
was an award of compensatory damages.

partition of the common area and therefore required written approval by two-thirds of the lot owners and their mortgagees. Second, the use of proxies in its adoption was not expressly authorized by the Declaration. Third, notice of the meeting at which it was considered had not been sent at least 15 days prior to the meeting, as required by the Declaration. Fourth, prior to its adoption, the HOA's president sent false information to the members. Fifth, its terms were internally inconsistent. Sixth, it effected a forfeiture or revocation of the recorded easement rights of the owners of Garaged Lots in derogation of their titles.

Having determined that the Amendment was invalid, the circuit court then ruled that the reservation of parking spaces in the common area for use solely by owners of Ungaraged Lots violated the Declaration by discriminating against Garaged Lot owners and giving them unequal access to the common area. Specifically, the court ruled that Section 3.1 of the Declaration gives all lot owners an equal right of use and enjoyment of the common area. Therefore, consistent with this Court's holding in Sully Station II Community Ass'n, Inc. v. Dye, 259 Va. 282, 289, 525 S.E.2d 555, 559 (2000), any assignment of parking spaces undertaken pursuant to Section 2.3.18 must benefit all lot owners equally without regard to the type of lot owned.

6

In considering the evidence of damages, the circuit court ruled that each lot owner held equitable title in the common area and therefore could testify as to its value. It likewise ruled that the HOA held legal title in the common area and its board members could testify as to its value as well. It also ruled that the HOA website was a publication of the HOA.

An entry on the website written by a board member indicated that the loss of assigned parking in the common area would decrease the value of Ungaraged Lots by $50,000 to $70,000. Because the Ungaraged Lots would be regarded as comparable properties in calculating the fair-market value of the Garaged Lots at resale, according to the website, the Garaged Lots would lose $50,000 to $70,000 in value also.

The circuit court ruled that the opinion expressed on the HOA's website was a party admission that loss of access to parking in the common area reduced a lot's value by $25,000 to $35,000 per space. Under Section 2.3.18 of the Declaration, the court continued, the HOA could assign a maximum of two spaces per lot provided the assignment benefited all lots equally, as required by Section 3.1. However, because the common area contained only 72 parking spaces, the HOA could properly assign, at most, one space per lot. Because the HOA chose to assign two spaces to each Ungaraged Lot instead of the one space to all lots equally, the HOA improperly deprived each Garaged Lot owner

7

of one space.  Accordingly, the court ruled that Batt and Grom each were entitled to compensatory damages of $25,000, the lower value of each parking space according to the website entry.

Because Martin had purchased his lot in 2006, after two parking spaces were reserved and assigned to each Ungaraged Lot, the circuit court ruled that the calculation of lost value did not apply to him.  However, based on his testimony regarding the calculation of the square footage of his lot and his real property tax assessment, the court determined that he had paid $37.50 per month in real property taxes on a parking space in the common area.[4]  Ruling that the assignment of parking spaces to Ungaraged Lots effected a forfeiture of Martin's right-of-use easement in the common area and, consequently, a loss of value equivalent to the apportioned tax assessment, the court awarded Martin compensatory damages of $1762.50 – $37.50 per month for each of the 47 months Martin had owned his lot.[5]

In addition, the circuit court awarded each Plaintiff compensatory damages for assessments paid to the HOA for maintenance of the common area.  Grom, a former board member, testified that $15 per month from the total monthly assessment

---

[4] According to Martin's testimony, his calculation resulted in a monthly payment of $35.70, not $37.50.  However, no party assigns error to the discrepancy and we adopt the circuit court's unchallenged determination.

[5] The court ruled that any loss of value by Batt and Grom attributable to forfeiture of their easement rights was subsumed by the $25,000 calculation of lost value.

levied by the HOA was spent on maintaining the common area. The court accordingly calculated that Martin was entitled to an additional award of $705 – $15 per month for 47 months--and Batt and Grom were each entitled to an additional award of $2355.[6]

Finally, the circuit court ruled that the Plaintiffs were the prevailing parties within the meaning of Code § 55-515(A) and therefore were entitled to an award of costs and attorneys' fees. The Plaintiffs adduced evidence of $191,445.19 in fees plus $3267.50 in expert witness costs. The HOA objected that the Plaintiffs were not the prevailing party on the nonsuited claim for breach of fiduciary duties or the abandoned action for declaratory judgment and injunctive relief and therefore were not entitled to costs and fees arising from them. The Plaintiffs identified $5767 in fees attributable to those claims, and the court awarded them $188,840.69.

We awarded the HOA this appeal.

## II. ANALYSIS

### A. ASSIGNING PARKING SPACES IN THE COMMON AREA

The HOA first challenges the circuit court's interpretation of the Declaration and its conclusion that parking in the common

---

[6] The court also awarded, in the alternative to the cumulative awards for loss of value and common area maintenance assessments, nominal damages of $10 to each Plaintiff but this alternative award was not included in the final order. We therefore do not consider it. See Moreau v. Fuller, 276 Va. 127, 137, 661 S.E.2d 841, 847 (2008) (stating that courts speak only through their written orders).

area must be assigned to all lot owners equally if assigned at all.  A declaration pursuant to the Act is "a contract entered into by all owners" of the lots in the subdivision it governs. Sully Station, 259 Va. at 284, 525 S.E.2d at 556 (internal quotation marks omitted).  Accordingly, we review the circuit court's interpretation of the Declaration de novo.  See Uniwest Constr., Inc. v. Amtech Elevator Servs., 280 Va. 428, 440, 699 S.E.2d 223, 229 (2010).

The HOA argues that nothing in the Declaration requires it to assign parking equally.  Section 2.3.18 allows it "to designate a maximum of two parking spaces within the Common Area for the exclusive use of the Owner of each Lot" but this provision also expressly absolves it of any requirement "to ensure that the parking spaces are available for the use of any particular Owner of a Lot."  Therefore, the HOA asserts that under this provision it could assign any particular lot owner one, two, or no parking spaces in the Common Area, while concomitantly assigning a different number of spaces to another lot owner.  Accordingly, the HOA contends Sully Station is distinguishable because in that case the association's declaration expressly required any licensing of the use of the common area to be "on a uniform, non-preferential basis," 259 Va. at 285, 525 S.E.2d at 557, but there is no such requirement in the Declaration here.  We disagree.

10

When a court interprets a contract, the words that the parties used are given their usual, ordinary, and popular meaning. Uniwest Constr., Inc., 280 Va. at 440, 699 S.E.2d at 229. Although the HOA argues that nothing in the Declaration requires that parking spaces in the common area be assigned equally, equality is inherent in the definition of a common area. A common area is defined as "[a]n area owned and used in common by the residents of a condominium, subdivision, or planned-unit development." Black's Law Dictionary 311 (9th ed. 2009) (emphasis added). "In common" means "[s]hared equally with others, undivided into separately owned parts." Id. at 833 (emphasis added). Accordingly, the HOA must assign parking spaces in the common area to all lot owners equally, if at all, unless the Declaration expressly provides otherwise. Nothing in the original Declaration does so, including its definition of "Common Area." Consequently, Sully Station controls the outcome on this issue.

The HOA argues that this interpretation renders meaningless its power under the Declaration to assign "a maximum of two" parking spaces in the common area because it contains only 72 spaces and there are 57 lots. We disagree. The phrase "a maximum of two" includes one and none, both of which are permissibly equal assignments of parking in the common area in its current, 72-space configuration. In addition, nothing in

11

the Declaration prohibits the HOA from "annexing" additional land as common area from which more parking spaces could be assigned.  To the contrary, Section 10.6 of the Declaration expressly confers such annexation power.[7]  Therefore, our decision that all lot owners must be treated equally by any assignment of parking in the common area has no effect on the meaning of the phrase "a maximum of two."

The HOA likewise argues that this interpretation renders meaningless the language in Section 2.3.18 absolving it of the obligation "to ensure that the parking spaces are available for the use of any particular Owner of a Lot."  We again disagree. The recited language merely discharges the HOA from a duty to enforce parking assignments.  Rather, enforcement is the prerogative of the assignees.  In short, the language means that if a vehicle is improperly parked in an assigned parking space, the HOA is not responsible for towing the vehicle away.  Our decision does not shift that responsibility to the HOA.

Accordingly, the circuit court did not err in ruling the Declaration requires that parking spaces in the common area be assigned equally among all lot owners.  We will affirm that portion of its judgment.

---

[7] We consider the authority of the HOA to take such action rather than whether it is likely to do so.

B.  THE VALIDITY OF THE AMENDMENT

The HOA next challenges the circuit court's determination that the Amendment is invalid.  Specifically, it assigns error to the court's rulings that the Declaration does not authorize the use of proxies to enact amendments, that the Amendment effected a partition of the common area and therefore required written approval by two-thirds of the lot owners and their mortgagees, and that the Amendment effected a forfeiture or revocation of the recorded easement rights of the owners of Garaged Lots in derogation of their titles.  However, these assignments of error contest only three of the six bases for the court's ruling.

It is well-settled that a party who challenges the ruling of a lower court must on appeal assign error to each articulated basis for that ruling.  United Leasing Corp. v. Thrift Ins. Corp., 247 Va. 299, 307-08, 440 S.E.2d 902, 907 (1994) (failure to assign error to an independent ground supporting the circuit court's ruling "barred any appellate relief that might otherwise have been available" on the ground challenged by the appellant); see also Parker-Smith v. Sto Corp., 262 Va. 432, 441, 551 S.E.2d 615, 620 (2001) ("Since the court had an independent basis for [its ruling] that is not the subject of an assignment of error, we cannot consider the arguments advanced by" the appellant.); Rash v. Hilb, Rogal & Hamilton Co., 251 Va. 281, 286, 467 S.E.2d

13

791, 795 (1996) ("[W]e cannot consider these arguments advanced by the [appellant] because there is an independent basis to support the [ruling below] on these issues and that basis has not been challenged on appeal."). Just as "[w]e cannot review the ruling of a lower court for error when the appellant does not bring within the record on appeal the [evidentiary] basis for that ruling," Prince Seating Corp. v. Rabideau, 275 Va. 468, 470, 659 S.E.2d 305, 307 (2008), we cannot review it when the appellant does not assign error to every legal basis given for it. "[O]therwise, 'an appellant could avoid the adverse effect of a separate and independent basis for the judgment by ignoring it and leaving it unchallenged.' " Johnson v. Commonwealth, 45 Va. App. 113, 116-17, 609 S.E.2d 58, 60 (2005) (quoting San Antonio Press v. Custom Bilt Machinery, 852 S.W.2d 64, 65 (Tex. App. 1993)).

However, the mere fact that the HOA has not assigned error to each basis for the circuit court's ruling does not end the inquiry. Rather, as the Court of Appeals has noted,

> we still must satisfy ourselves that the alternative holding is indeed one that (when properly applied to the facts of a given case) would legally constitute a freestanding basis in support of the [lower] court's decision. . . . But, in making that [evaluation], we do not examine the underlying merits of the alternative holding – for that is the very thing being waived by the appellant as a result of his failure to [assign error to it] on appeal.

14

<u>Id.</u> at 117, 609 S.E.2d at 60.  Where, as here, an appellant's assignments of error leave multiple bases for the challenged ruling uncontested, our review is satisfied by a determination that any one of them provides a sufficient legal foundation for the ruling.

In this case, the circuit court determined that the meeting at which the Amendment was adopted was improper because the HOA provided inadequate notice under the Declaration.  Without reviewing the correctness of that determination, <u>id.</u>, we are satisfied that, if correct, it would render the Amendment invalid because a meeting of a corporation held upon inadequate notice is an improper meeting and the corporate acts undertaken therein are invalid as a matter of law.  <u>Noremac, Inc. v. Centre Hill Court, Inc.</u>, 164 Va. 151, 166-67, 178 S.E. 877, 881-82 (1935).  Accordingly, this ground forms a separate and independent basis to affirm the circuit court's ruling that the Amendment was invalid and we will not reverse it.

### C.  DAMAGES

The HOA next challenges the circuit court's award of compensatory damages.  "Factual findings of a trial court are entitled to the same weight as a jury verdict and will not be set aside unless they are plainly wrong or without evidence to support them."  <u>Riverside Owner, L.L.C. v. City of Richmond</u>, 282 Va. 62, 75, 711 S.E.2d 533, 540 (2011).  This Court "view[s] the

15

evidence and all reasonable inferences fairly deducible from it in the light most favorable to the prevailing party at trial," and "review[s] matters of law de novo." Bennett v. Sage Payment Solutions, Inc., 282 Va. 49, 54, 710 S.E.2d 736, 739 (2011) (quoting Syed v. ZH Technologies, Inc., 280 Va. 58, 68, 694 S.E.2d 625, 631 (2010)).

In a claim for breach of contract, proof of damages is an essential element and a plaintiff's failure to prove it requires that the action be dismissed. Collelo v. Geographic Servs., 283 Va. 56, 72, 727 S.E.2d 55, 62 (2012); Sunrise Continuing Care, LLC v. Wright, 277 Va. 148, 156, 671 S.E.2d 132, 136 (2009). Further, the plaintiff bears "the burden of proving with reasonable certainty the amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of the recovery. Damages based on uncertainties, contingencies, or speculation cannot be recovered." Shepherd v. Davis, 265 Va. 108, 125, 574 S.E.2d 514, 524 (2003) (internal citations and quotation marks omitted). This burden requires the plaintiff "to furnish evidence of sufficient facts and circumstances to permit the fact-finder to make at least an intelligent and probable estimate of the damages sustained." Dillingham v. Hall, 235 Va. 1, 4, 365 S.E.2d 738, 739 (1988) (internal quotation marks omitted). "Proof with mathematical precision is not required, but there must be at least sufficient

evidence to permit an intelligent and probable estimate of the amount of damage." Id. at 3-4, 365 S.E.2d at 739 (emphasis and internal quotation marks omitted).

The circuit court found that the Plaintiffs had suffered compensatory damages arising from the parking space assignments. In doing so, it relied primarily on the calculation from the website entry that Ungaraged Lots would lose $50,000 to $70,000 if no parking spaces were assigned to their owners' use. It extrapolated that if Ungaraged Lots lost $50,000 to $70,000 when deprived of the assignment of two spaces (i.e., $25,000 to $35,000 per space), Garaged Units must lose the equivalent amount when deprived of the single space that their owners would have been assigned if the HOA had treated all lot owners equally. But this treats the assignment of parking spaces as a zero-sum game in which any increase in the value of Ungaraged Lots from assigning parking spaces necessarily reduces the value of Garaged Lots proportionally.

This perspective is refuted by the evidence in the record. The website entry and witness testimony, including that of the website entry's author, established that rather than decreasing the Garaged Lots' value, assigning two parking spaces to Ungaraged Lots actually increased the Garaged Lots' value because the assignment increased the value of the Ungaraged Lots and Ungaraged Lots were considered comparable units in

determining the value of Garaged Lots at resale.  Accordingly, rather than increasing the value of some lots at the expense of others, as in a zero-sum game, the parking space assignment was in effect a rising tide lifting all ships.[8]

Other evidence adduced by the Plaintiffs at trial purporting to establish a diminution of the value of their lots was insufficient to meet their burden.  At best, it established the replacement value of a parking space in the common area.  But we have said that "[d]iminution in value of real property is not replacement value."  Campbell County v. Royal, 283 Va. 4, 26, 720 S.E.2d 90, 101 (2012).  Rather, "[t]he correct measure of damages . . . is undoubtedly the diminution in value of the property by reason of the change, or the difference in value before and after the change."  Id. at 25, 720 S.E.2d at 101

---

[8] The circuit court's view also exemplifies the fallacy of denying the antecedent in propositional logic.  Denial of the antecedent occurs when reasoning that, "If P, then Q.  Not P.  Therefore, not Q."  See Ruggero J. Aldisert, Logic for Lawyers: A Guide to Clear Thinking 158 (3d ed. 1997).  In this case, the proposition is that if the HOA assigns parking spaces ("P"), then the property value of the assignee lots increases ("Q").  The HOA did not assign parking spaces to the Garaged Lots ("not P"), therefore the property values of Garaged Lots did not increase ("not Q").  Accordingly, the proposition that any increase in the value of Ungaraged Lots attributable to the parking assignment necessitated a proportional decrease in the value of Garaged Lots is not a reasonable inference fairly deducible from the evidence.

(quoting Town of Galax v. Waugh, 143 Va. 213, 229, 129 S.E. 504, 509 (1925)).[9]

With respect to Batt and Grom, Grom testified that Garaged Lots originally cost $6000 more than Ungaraged Lots. However, Batt testified that the higher price was attributable to the cost of additional materials associated with Garaged Lots compared to Ungaraged Lots, such as the concrete necessary for the driveway. Moreover, they have adduced no evidence of the value of their lots before the parking space assignment or the value of their lots after spaces were marked reserved and assigned to Ungaraged Lots in 1993 or 1994. Accordingly, any loss of value now cannot be attributed with reasonable certainty to the parking space assignment. Cf. Shepherd, 265 Va. at 125, 574 S.E.2d at 524 (The plaintiff must prove "with reasonable certainty the amount of damages and the cause from which they resulted." (emphasis added) (internal quotation marks omitted)).

Thus there is no evidence in the record supporting the award of compensatory damages for diminution of property value. That portion of the circuit court's judgment must be reversed.

The HOA also contends that the circuit court's award of other compensatory damages was improper. Specifically, the

---

[9] While the holding in Campbell County arose from an inverse condemnation action, inverse condemnation actions proceed on a theory of breach of implied contract. See Richmeade, L.P. v. City of Richmond, 267 Va. 598, 602-03, 594 S.E.2d 606, 608-09 (2004).

court determined the HOA had deprived Martin of a parking space for which he had paid $37.50 per month in real property taxes and awarded him $1762.50 – 47 months of payments.  It also found that the parking space assignment deprived the Plaintiffs of their use of the common area that they had paid to maintain as part of their monthly assessments.  Grom, a former member of the HOA's board of directors, testified that $15 of each month's assessment went to maintaining the common area.  The court therefore awarded compensatory damages of $2355 each to Batt and Grom and $705 to Martin for such maintenance payments.

The HOA asserts the Plaintiffs may not recover these damages because they were not identified as damages sought in their discovery responses.[10]  The purpose of discovery is to

---

[10] In its First Set of Interrogatories, the HOA propounded the following:  "Interrogatory 18:  Itemize with particularity all expenses and/or damages incurred by you as a result of the occurrences alleged in the Complaint.  Include an itemization of all attorney's fees and costs you have allegedly incurred."  The Plaintiffs responded:

> Subject to and without waiving the foregoing
> objections, Plaintiffs state as follows:
>     Decreased property value related to deprivation
> of reserved parking spaces: $70,000 per Plaintiff.
>     Attorneys' fees and costs:  currently in
> excess of $66,000, and increasing with additional
> fees incurred through the resolution of this
> matter.
>     Punitive damages in an amount to be determined
> by the Court.

The HOA argued to the circuit court that the Plaintiffs' interrogatory response limited their grounds for recovery in objections at trial, in supplemental briefing directed by the court, and in a motion to strike the Plaintiffs' evidence, and

narrow the issues being litigated, the HOA argues, so it was entitled to rely on the Plaintiffs' response.

We have said that "a trial court's decision to admit evidence that is not timely disclosed, rather than to impose the sanction of excluding it, will not be reversed unless the court's action amounts to an abuse of discretion." Rappold v. Indiana Lumbermens Mut. Ins. Co., 246 Va. 10, 15, 431 S.E.2d 302, 305 (1993). A court abuses its discretion "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011).

The purpose of discovery is to narrow the issues being litigated. Little v. Cooke, 274 Va. 697, 717-18, 652 S.E.2d 129, 141 (2007) (citing Sheek v. Asia Badger, Inc., 235 F.3d 687, 693 (1st Cir. 2000)). However, such narrowing principally serves the purpose of avoiding surprise. See id. at 718, 652 S.E.2d at 141. Accordingly, we have held that permitting a plaintiff to raise a new claim at trial that was neither

---

it renews the argument on appeal in its third assignment of error.

21

disclosed in discovery nor pled in the complaint constituted an abuse of discretion because the defendant was prejudiced by the inability to prepare to defend against the new claim.  Id.

With respect to the assessments, there was neither prejudice nor surprise.  The amended complaint included an allegation that the Plaintiffs had paid assessments, partially for the purpose of maintaining the common area.  The circuit court therefore did not abuse its discretion in permitting Grom's testimony.  Conversely, the amended complaint did not include any allegation that the Plaintiffs had paid taxes on the common area.  That issue therefore was outside the scope of both the pleadings and discovery.  It was raised for first time at trial and the HOA promptly objected.  Accordingly, we will affirm the circuit court's award of compensatory damages for the portion of the assessments attributable to maintenance of the common area but reverse its award to Martin for apportioned real property taxes.

### D.  ATTORNEYS' FEES

Finally, the HOA argues that Code § 55-515(A) does not allow the circuit court to award attorneys' fees to homeowners if they are the prevailing party in an action they bring against an association.  Alternatively, the HOA argues that the evidence does not establish that the fees awarded arose from the claim on which the Plaintiffs were the prevailing party.

22

The circuit court's application of Code § 55-515(A) presents a question of statutory interpretation, which we review de novo. Eberhardt v. Fairfax County Emps. Ret. Sys. Bd. of Trs., 283 Va. 190, 194, 721 S.E.2d 524, 526 (2012).

In determining that the Plaintiffs in this case were entitled to an award of costs and attorneys' fees under the statute, the circuit court relied on our construction in White v. Boundary Ass'n, Inc., 271 Va. 50, 624 S.E.2d 5 (2006). The court noted that in that case, we determined that homeowners who sued an association seeking a declaratory judgment were the prevailing party under Code § 55-515(A) and thus were entitled to an award of costs and attorneys' fees. The HOA argues that the court's reliance on White is misplaced because we "did not undertake any analysis of the statute" in that case. We disagree.

Prior to July 1, 2012, Code § 55-515(A) provided that

[e]very lot owner, and all those entitled to occupy a lot shall comply with all lawful provisions of this chapter and all provisions of the declaration. Any lack of such compliance shall be grounds for an action or suit to recover sums due, for damages or injunctive relief, or for any other remedy available at law or in equity, maintainable by the association, or by its executive organ or any managing agent on behalf of such association, or in any proper case, by one or more aggrieved lot owners on their own behalf or as a class action. The prevailing party shall be entitled to recover reasonable attorneys' fees and costs expended in the matter.

23

Former Code § 55-515(A) (2007 Repl. Vol.).  The HOA contends that the first sentence of the statute requires lot owners and occupants to comply with the declaration, the second sentence allows certain parties to bring an action against lot owners and occupants to enforce such compliance, and the third sentence allows the prevailing party in such an action to recover its costs and fees.  But in this case, the HOA argues, it is neither an owner nor occupant of a lot, and therefore the Plaintiffs' action to enforce its compliance with the Declaration is outside the scope of the statute.

The HOA's position creates a patent imbalance under which the question of whether a lot owner or occupant is entitled under the statute to an award of costs and fees in a suit to enforce a declaration turns as much on whether an association is the enforcer or alleged violator as on whether the lot owner or occupant prevails.  Under the HOA's interpretation of the statute, when an association sues a non-compliant lot owner or occupant and wins, it is entitled to the damages and other legal and equitable relief it may seek and an award of costs and fees as well.  However, where the aggrieved lot owner or occupant successfully undertakes a seemingly quixotic quest to force an association to comply with its own declaration, he must bear the expenses of litigation alone.

We implicitly rejected this inequity six years ago in <u>White</u> and we expressly reject it today.  In <u>White</u> we held that Code § 55-515(A) allowed lot owners and occupants as well as associations to recover litigation expenses resulting from successful suits to enforce compliance with a declaration.  271 Va. at 57, 624 S.E.2d at 9-10.  The General Assembly is presumed to be aware of our interpretation.  Its failure to express a contrary intention by enacting appropriate legislation is not only acquiescence but approval.[11]  <u>Barson v. Commonwealth</u>, 284 Va. 67, 74, 726 S.E.2d 292, 296 (2012).  Accordingly, <u>White</u> controls and Code § 55-515(A) entitles the Plaintiffs to an award of costs and attorneys' fees.

Nevertheless, the statute establishes boundaries for the costs and fees which may be awarded.  As we indicated in <u>Ulloa v. QSP, Inc.</u>, 271 Va. 72, 83, 624 S.E.2d 43, 50 (2006), in an action encompassing several claims, the prevailing party is entitled to an award of costs and attorneys' fees only for those claims for which (a) there is a contractual or statutory basis for such an award and (b) the party has prevailed.  Therefore, Code § 55-515(A) authorizes an award of costs and fees to the

---

[11] As noted above, the General Assembly amended the statute effective July 1, 2012.  The amendment does not derogate our judgment in <u>White</u>.  To the contrary, it applies only to actions against a lot owner for nonpayment of association assessments. 2012 Acts ch. 758.  The fact that the legislature chose to amend the statute but declined to supersede <u>White</u> while doing so further attests that we correctly ascertained its intention.

Plaintiffs in this case only on claims that (a) were brought to enforce the Declaration and (b) they prevailed upon.

The claim for breach of fiduciary duties satisfies neither criterion. While the claim for declaratory and injunctive relief satisfies the first, it does not satisfy the second because it was abandoned by its omission from the amended complaint. However, the breach of contract claim satisfies both criteria and the Plaintiffs therefore are statutorily entitled to an award of costs and fees on it.

Still, the Plaintiffs bear the burden of establishing the amount of costs and fees arising from the breach of contract claim for which the statute entitles them to an award. Ulloa, 271 Va. at 83, 624 S.E.2d at 50. The HOA argues that the evidence does not support the circuit court's award of $188,840.69 because the Plaintiffs failed to explain how the sum could arise solely from the single claim on which they prevailed.[12]

---

[12] The HOA also argues that the Plaintiffs' invoices and affidavit regarding attorneys' fees were not admitted into evidence. However, it did not object to their consideration by the circuit court at the attorneys' fees hearing. Rather, the record reflects only that the HOA objected to the Plaintiffs' attempt to question their expert witness using the HOA's invoices because they had not been admitted. In addition, the HOA acknowledged that the Plaintiffs were submitting their claim for attorneys' fees on affidavits, invited the circuit court to review certain items listed in the invoices, and its expert testified that he had reviewed the Plaintiffs' submissions in

As we noted in <u>Ulloa</u>, "[t]he amount of the fee award rests within the sound discretion of the trial court," 271 Va. at 82, 624 S.E.2d at 49, and we therefore will not reverse it absent an abuse of that discretion.  <u>Northern Va. Real Estate, Inc. v. Martins</u>, 283 Va. 86, 117, 720 S.E.2d 121, 137 (2012).  As noted above, a court abuses its discretion "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."  <u>Landrum</u>, 282 Va. at 352, 717 S.E.2d at 137.

We set forth the factors to be considered when determining an award of attorneys' fees in <u>Chawla v. BurgerBusters, Inc.</u>, 255 Va. 616, 499 S.E.2d 829 (1998).  They include, among other things, "the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate."  <u>Id.</u> at 623, 499 S.E.2d at 833.

---

preparing his testimony.  Accordingly, this argument has not been preserved for appeal.  Rule 5:25.

27

Each of the parties argued these factors to the circuit court.[13] We therefore are satisfied that the court considered the relevant factors without giving significant weight to any irrelevant improper factor.

In considering whether the circuit court nevertheless made a clear error of judgment, we note that the Plaintiffs' expert witness testified that the claims for declaratory and injunctive relief and for breach of contract were inseparable because they both involved the HOA's powers under the Declaration. The breach of contract claim largely subsumes the claim for a declaratory judgment because the circuit court was required to ascertain what the Declaration required in order to determine whether the HOA had breached it. Similarly, the HOA's expert witness testified that no entries in the Plaintiffs' invoices were associated with the claim for breach of fiduciary duties after the filing of the complaint. Finally, the Plaintiffs identified the entries on their invoices associated with the fiduciary duty claim, including the time spent on preliminary research, preparing the complaint, negotiating settlement, and preparing and filing the nonsuit of that claim. They excluded those entries, which amounted to $5767, from the amount of attorneys' fees sought. We therefore are satisfied that the

---

[13] The court also considered the effect of false evidence by the HOA in protracting the length of trial.

circuit court did not make a clear error of judgment in awarding $188,840.69.

Accordingly, we find the circuit court did not err in ruling that Code § 55-515(A) entitled the Plaintiffs to an award of costs and attorneys' fees on the breach of contract claim. Further, it did not abuse its discretion in determining the amount of that award. We will affirm that portion of its judgment.

## III. CONCLUSION

For the foregoing reasons, we will affirm the judgment in part, reverse it in part, and enter final judgment of $2355 to Batt, $2355 to Grom, and $705 to Martin. We likewise enter final judgment for the Plaintiffs of $188,840.69 in costs and attorneys' fees under Code § 55-515(A). We also will remand the case to the circuit court for a determination and award of reasonable costs and attorneys' fees incurred by the Plaintiffs subsequent to its entry of the judgment appealed from.

<u>Affirmed in part and final judgment, reversed in part and remanded</u>.