# CIRCUIT COURT OF AMHERST COUNTY

New Bethel Estates, L.L.C.

v.

Fred W. Howell
and New Bethel
Property Owners
Association

March 17, 2016

Case No. CL15009404

By Judge Michael T. Garrett

This case involves a dispute between the developer of a subdivision and a homeowners' association. New Bethel Estates, L.L.C. (hereinafter "Declarant") along with Falling River, Ltd. (hereinafter "Falling River") were developers of a subdivision known as New Bethel Estates and New Bethel Commons located in Amherst County, Virginia.

The Declarant recorded the Second Amended Declarations of Protective Covenants New Bethel/New Bethel Commons (hereinafter "Declarations"). The Declaration established the New Bethel Property Owners' Association (hereinafter "Association").

A dispute has arisen between the Declarant and the Association over three issues:

1. The requirements for the Declarant to amend the Declaration;

2. The authority of the Association to access the Declarant for road maintenance expenses; and

3. The authority of the Association to bar the Declarant from voting in the Association based upon delinquent road maintenance assessments.

The Declarant filed this declaratory judgment action, seeking findings on these issues.

### Issues and Findings

A. *Does Declarant Need the Consent of Falling River, Ltd. (a Dissolved Virginia Corporation) To Amend the Declaration?*

This matter requires the Court to review the Declaration to determine the meaning of certain provisions. The Declaration provides:

> 22. *Reservations*:
> A. Declarant reserves the right to amend, delete or add to the covenant and restrictions with the written consent of Falling River, Ltd., a Virginia Corporation, which will not be unreasonably withheld, as well as add adjacent parcels of land to New Bethel Estates. New additions will be governed by these Protective Covenants and any amendments thereof. Provided however that these covenants and restrictions may be amended, deleted or added by affirmative 75% vote of the members herein.

Thus, by the express terms, the Declaration requires that New Bethel obtain the written consent of Falling River, a Virginia Corporation, to amend the Declaration.

Fred Howell testified that he had been the owner of Falling River, which was an original participant in the creation of this development. Under § 22A *Reservations*, the power of the Declarant to amend, delete, or add to the Covenants and Restrictions was subject to the written consent of Falling River. This provision included the condition that the written consent "will not be unreasonably withheld."

At trial, the Declarant introduced Articles of Termination of Corporation Existence for Falling River, Ltd. (Exhibit B). These records indicate that by order of the Virginia State Corporation Commission, Falling River ceased to exist on September 11, 2007. Fred Howell testified that Falling River is dissolved and no longer owns any lots in the development.

Under Virginia law, once a Virginia corporation voluntarily dissolves, it no longer exists. *Moore v. Occupational Safety & Health Review Comm'n.,* 591 F.2d 991 (4th Cir. 1979). In that Falling River ceased to exist as of September 11, 2007, as a non-existent corporation, it cannot consent nor object to any amendments to the Declaration. Therefore, the Declarant cannot be required to do an impossible act, that is, to obtain the consent of a non-existent entity.

Even if, as a non-existent entity, Falling River could somehow act to object to the amendment, it no longer owns any interest in any lots in the development. Therefore, in that Falling River no longer has any ownership interest in any lots in the development, an objection to any amendment to the Declaration by the Declarant would not be reasonable. Therefore, for both of the above stated reasons, the Court finds that the consent of Falling River is not required in this case.

The Association argues that the consent requirement was included to allow Falling River to protect lot owners. The Court finds that nothing in the Declarations establish Falling River as the protector of the interests of landowners. The Court finds that Falling River, as an original developer, included the consent provision to protect its own interests, which no longer exist.

The Association next argues that there are three conditions precedent to Declarant amending the Declaration: (1) the Declarant must take the action proposing to amend the Declaration; (2) Declarant must obtain the written consent of Falling River; and (3) that the Declarant must obtain the affirmative 75% vote of the members therein.

In particular, the Association points to paragraph 22(a) which provides:

> Declarant reserves the right to amend, delete or add to these covenant and restrictions with the written consent of Falling River, Ltd., a Virginia Corporation, which will not be unreasonably withheld, as well as add additional adjacent parcels of land to New Bethel Estates. New additions will be governed by these protective covenants and any amendments thereof. *Provided however these covenants and restrictions may be amended, deleted, or added by the affirmative 75% vote of the members herein.*

(Emphasis added.)

Such a strained reading of this provision is not compatible with rules of construction. Clearly, by the above language, the Declarant reserved the right unto himself to amend, delete, or add to the covenants, subject only to the written consent of Falling River, which could not be unreasonably withheld. The last sentence of this paragraph simply sets forth another manner in which the covenants and restrictions may be amended, deleted, or added to, by an affirmative 75% vote of the members. Therefore, the Court does not construe this last sentence as adding the additional requirement that the Declarant must obtain 75% of the lot owners' consent to such an amendment. The Court does not find this clause to be ambiguous, and as such, does not need to rely upon rules of construction.

The Association next argues that if the Declarant's interpretation of the language is accepted by the Court, the Declarant will retain the perpetual authority to amend the Declaration; this interpretation is not correct. As the

Declarant sells lots in the development, the Declarant loses the votes tied to those lots. Once the Declarant's ownership of lots falls below 25%, the Association would then be able to obtain the 75% affirmative vote needed to amend the Declaration.

The Declarant currently owns ten of the thirty-seven lots, which is 27%. Accordingly, at the present time the Declarant possesses 27% of the lots, and thus, 27% of the votes. The other landowners collectively own 73% of the lots, and thus, 73% of the votes. In fact, upon the sale of one more lot by the Declarant, 75% of the lots will be owned by individuals in the Association other than the Declarant. Once this occurs, an affirmative vote of 75% of lot owners could be obtained to amend the Declaration to remove Declarant's ability to thereafter amend the Declaration. In other words, Declarant's authority to amend the Declaration is not perpetual, as it could be terminated by the lot owners after the sale of one more lot.

The Association next argues that, as the Declarant is not on the Board of Directors and the Declarant no longer holds a majority of the votes in the Association, under Code § 55-509.2, control over the Declaration has now passed to the Board. However, Code § 55-509.2 in no way addresses the authority of the Declarant to amend the Declaration as set forth in the Declaration itself, nor does it shift this authority to the Board. This interpretation misreads Code § 55-509.2, which simply directs at what point in time the developer/declarant must deliver documents, records, and insurance policies to the Board of Directors to be used and held on behalf of the Association. This statute does not deprive the Declarant of the authority granted by the express terms of the Declaration.

The Defendant cites Code § 55-515.2 of the Code of Virginia, arguing that unilateral changes to the Declaration can only be made for a period of five years; however, the Supreme Court rejected this argument in *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330 (2011). In *Zinone*, the Court stated:

> [W]e conclude that the plain language of the provisions of the POAA [Section 55-515.2] concerning the ability to amend a declaration are neither mandatory nor exclusive, and, thus can be controlled by the express provisions of a particular declaration. In this case, the declaration does exactly that, by providing that the covenants set forth in the declaration can be amended by the Association "upon an affirmative vote of 2/3 of the membership [thereof] or by the declarant unilaterally anytime" within the time limit specified in the declaration.

*Id.* at 337 (emphasis added).

Therefore, as the Court held in *Zinone*, the Declaration controls as opposed to the default provisions in Code §§ 55-515.1 and 55-515.2, where the Declaration speaks to the issue, as in this case.

B. *Can the Association Assess New Bethel Dues Assessments for Road Maintenance?*

The Court finds that New Bethel may not be assessed dues for road maintenance. The applicable provisions of the Declaration provide:

> 2. *Property Owners Association and Annual Assessments*
> A. Every personal entity, as a record owner of any lots in the subdivision shall be a member of the New Bethel Property Owners Association ("Association"), and shall be entitled to One (1) vote for each lot owned, provided however New Bethel Estates, L.L.C., shall have the exclusive right to add up to 16 lots, for an aggregate total 40 lots, which shall be part of the association and enjoy the rights, responsibilities and appurtenances thereto, including the river front beach area. The association shall be incorporated under the laws of the Commonwealth of Virginia.
> B. The roadways, right-of-ways, common areas, and all amenities thereto constructed throughout the subdivision are for the use in common of the Declarant, lot owners and their respective heirs, successors and assigns. Dedication shall not inhibit convenient use of the subdivision's roadways or common area and amenities thereto.
> C. Each tract owner shall be responsible for road Maintenance, and Subject to rules and regulations of the New Bethel Road Maintenance Agreement and the Property Owners Association.
> The *responsibility of the tract owners* for the maintenance of the road *shall begin once the Declarant sells the tract.*
> The *Declarant is responsible for road upkeep on any unsold tract until such time that the Declarant turns them over to the Association.*
> *At that time* the roads will remain private, and *the Association shall maintain* all common areas, rights of way, and area *roads* as described in the, above mentioned plats . . . all amenities thereto within the Subdivision, *and shall assess each Lot amounts necessary for the* improvement and *maintenance of said* rights-of-ways, *roads,* common areas and amenities thereto, not to exceed $250.00 per lot annually.

(Spacing and emphasis added.)

The Court finds that the language regarding assessments for road maintenance is not ambiguous. By the terms of this provision, each tract owner is responsible for road maintenance and subject to rules and regulations of the New Bethel Road Maintenance Agreement and the

Property Owners' Association, but the obligation of the tract owner for the road maintenance does not begin until the Declarant sells the lot. The Declarant is responsible for road upkeep on any unsold tracts *until such time that the Declarant turns them over to the Association*; it turns them over by selling the lots, at which time the lot owners are responsible for road maintenance and made subject to the road maintenance agreement and assessment for the road maintenance fees by the Association. The last sentence confirms the above construction: "At that time the road shall remain private . . . and the Association shall maintain the . . . roads . . . and shall assess each Lot amounts necessary . . . for the . . . maintenance of said . . . roads . . . ." In other words, the Association is responsible for the road maintenance after the lot is sold, and, at that time, the Association is vested with the authority to assess the lot owner and the lot owner is obligated to pay the assessment. The above construction reads every part of this provision together and gives every part meaning.

The construction urged by the Association requires ignoring many of the plain terms of this provision, such as, "The Declarant is responsible for the road upkeep on any unsold tract *until such time as the Declarant turns them over to the Association*." How can it be said that the Association controls that portion of the road in front of the unsold lots and can assess the Declarant for road maintenance thereof, before the Declarant turns them over to the Association? Such a construction would require the Court to ignore the plain language of the provision. As the Supreme Court of Virginia held in *Wilson v. Holifield*, 227 Va. 184 (1984), "[C]ourts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein." The authority of the Association to assess for road maintenance does not begin for a lot until it is sold.

Therefore, the Court finds that the Declarant is responsible for road upkeep on any unsold tract until such time as the parcel is sold. When the tract is sold, the road adjacent to that lot becomes the responsibility of the Association to conduct the road maintenance and at the same time, the lot owner may be assessed for that road maintenance under the applicable rules and regulations of the Association. Therefore, based on the foregoing, the Court finds that the Association may not assess the Declarant for charges related to road maintenance.

The Court must address another argument the Association has in support of their claimed authority to assess the Declarant for road maintenance. The Association points to the language "provided however, New Bethel Estates, L.L.C., shall have the exclusive right to add up to 16 lots, for an aggregate total of 40 lots, which shall be part of the association and enjoy the rights, responsibilities and appurtenances thereto, including the river front beach area." The Association argues that this phrase somehow makes the Declarant responsible for road maintenance. This provision does not impose upon the Declarant the obligation to pay for road maintenance,

but rather indicates that New Bethel reserves the right to add 16 lots, and, if it does, then those 16 lots will enjoy the same rights, responsibilities and appurtenances thereto, including the river front beach area. In other words, this provision, by its clear terms, was intended to include the new lots in the Association, if added by Declarant, not to impose duties upon the Declarant clearly eliminated by other terms as discussed above. The above interpretation is consistent with the plain language contained in the Declaration.

The Association next argues that the Bylaws adopted by the Association modify the Declarant's Obligation set forth in the Declaration. This argument is in conflict with Code § 55-509.3, which provides:

> *Except as expressly authorized in this chapter, in the declaration, or otherwise provided by law*, no association may (i) make an assessment or impose a charge against a lot or lot owner unless the charge is a fee for services provided or related to use of the common area or (ii) charges related to provisions set out in § 55-509.6 or § 55-509.7 that is not expressly authorized by these sections.

(Emphasis added) (Sections 55-509.6. and 55-509.7 are inapplicable as they relate to fees the Association may chose for disclosures required for closings.)

Accordingly, unless authorized by the chapter (Chapter 55 of the Code of Virginia) or the Declaration, no charges for anything other than common area may be charged. The Declaration, as stated above, does not permit the Declarant to be charged for road maintenance. The Association can point to no statute that authorizes the charge to the Declarant for the road maintenance. Accordingly, only the charges for common areas are permissible under Code § 55-509.3. As the Bylaws are in conflict with the Declaration they must yield, under Code § 55-509.3, to the clear language of the Declaration.

Finally, the Association argues that Declarant's prior payment of the assessment confirms his acknowledgment that the assessment was proper and bars him from challenging the assessment at this time. The fact that Declarant inadvertently or incorrectly paid assessments from 2007 to 2011 does not bind Declarant when it was not legally obligated to pay for road maintenance. When the Association recorded liens for delinquent assessments against lots owned by the Declarant, he was unable to sell these lots without satisfying the liens at closing; payment of these prior assessments does not now bar a challenge to the legality of the assessments for road maintenance.

C. *May the Association Bar the Declarant from Voting in the Association Due to Delinquent Assessments?*

The Court ruled above that the Association may not assess the Declarant for road maintenance expenses. However, at trial, James W. Dean, Board Member of the Association, testified that the Association had incurred expenses for maintenance of both roads and the common area. Thus, it appears that the assessments imposed against the Declarant were mixed, in that they improperly included in the assessments expenses for road maintenance, as well as expenses for maintenance and upkeep of the common areas. Therefore, in that the assessment appears to have included expenses for the common areas in the assessments, the Court must determine if such an assessment was proper, because if it was proper, the Court would then need to determine if the Association can bar the Declarant from voting based upon delinquent assessments for the common area expenses.

The Court finds no provision in the Declaration that exempts the Declarant from assessments by the Association for the expenses related to the common areas. The language in the Declaration that exempted the Declarant from paying road maintenance assessments was specific to road maintenance and does not apply to assessments for common areas. In addition, the Court finds the language of Code § 55-509.3 to be applicable, which provides, in part:

> Except as expressly authorized in this chapter, in the declaration, or otherwise provided by law, no association may (i) make an assessment or impose a charge against a lot or lot owner unless the charge is a fee for services provided or related to use of the common area . . . .

Thus, if authorized by the Declaration, the Declarant may be assessed for expenses, related to the common area. Provision 2C of the Declaration provides, in pertinent part:

> [T]he Association shall maintain all common areas . . . all amenities thereto within the Subdivision, and shall assess each Lot amounts necessary for the improvement and maintenance of said . . . common areas and amenities thereto, not to exceed $250.00 per lot annually.

Therefore, the Court finds, based upon the express terms of the Declaration, that as a lot owner, the Declarant may be properly assessed up to $250.00 per lot annually for improvement and maintenance of the common areas and amenities.

In that the Court has ruled above that the Association may issue an assessment against the Declarant for the common areas and amenities, it must address the issue of whether an unpaid assessment for the common

area and amenities permits the Association to bar the Declarant from voting in the Association due to unpaid assessments.

The Court holds that under the terms of the Declaration, the Association may not bar a homeowner, and in this case the Declarant, from exercising a right to vote granted by the Declaration simply by adopting bylaws in conflict with the Declaration. In *White v. Boundary Ass'n, Inc.*, 271 Va. 50 (2006), the Supreme Court of Virginia held that where a declaration expressly granted a unit owner the enjoyment of a common area, the plain terms of the declaration were subject to change only under the proper vote to change the declaration, not passage of a bylaw or rule. The Court held that the provisions of the declaration rendered invalid any rule or regulation adopted under the bylaws that have the effect of divesting the owners of rights wanted in the declaration. Specifically, *White* held that Code § 55-513 permits the homeowners to adopt rules and regulations with respect to common areas; however, the statutory authority was subject to the express reservation of rights set forth in the declaration.

The Declaration in this case provided that "each person or entity who is a record owner of any lot in the subdivision shall be a member of the New Bethel Property Owners' Association ("Association") and shall be entitled to one (1) vote for each lot owned." As the Court held in *White*, when the contract language (declaration) is plain and unambiguous, the intent of the parties is determined from the words as actually expressed. The Association in this case takes the position that while the Declaration grants the right to vote, no provision in the Declaration prevents suspension of this right. Thus, the Association argues that a right granted by the Declaration can be suspended by the Bylaws. Such a construction would render the rights granted by the Declaration meaningless and would be in direct violation of the Court's holding in *White*. A right granted by the express terms of the Declaration, in this case the right to vote, cannot be taken away by the passage of bylaws, unless the Declaration or statute specifically grants such authority.

More importantly, the Declaration specifies the mechanism for enforcement, of unpaid assessments in paragraph 2E which provides:

> Any assessments, together with interest and costs shall be a lien upon the lot against which such assessment is made. The association shall have the right to file among the land records of Amherst County, Virginia, a duly executed and acknowledged notice of lien with respect to each lot and its owner for which any assessment remains unpaid.

If the Association was intended to have the authority to suspend voting rights, it certainly would have been included along with the other enforcement mechanisms specifically spelled out in the Declaration along with the above language.

The General Assembly has permitted only very limited instances where the Board of Directors may adopt rules and regulations affecting the rights of home owners. Specifically, under Code § 55-513(B) the Board of Directors shall have the power to pass rules and regulations to suspend a member's right to use the common areas based upon nonpayment of assessments that are more than sixty days past due, but only to the extent permitted by the Declaration. As the Supreme Court held in *White*, the terms of the Declaration constitute the contract collectively entered into by all of the unit owners. The Association may only amend the Declaration on obtaining the 75% affirmative vote as required by the Declaration, not by passing bylaws upon a lesser vote to approve rules which clearly conflict with the Declaration.

## *Holding*

For the reasons set forth above, the Court rules as follows:

1. Declarant does not need to obtain the permission of Falling River in order to amend the Declaration, as Falling River terminated its corporate existence and has no interest in the development;

2. The Association may not levy assessments for road maintenance against the Declarant for the reasons set forth above. The Association may assess the Declarant for proper expenses for the common area and amenities; and,

3. The Association lacks the authority to suspend the voting privileges of the Declarant for a failure to pay an assessment.