IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Fall 2025 Term

_____

No. 24-ICA-398

_____

FILED

November 13, 2025

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

U.S. BANK TRUST NATIONAL ASSOCIATION,
as Trustee of LB-RANCH SERIES V TRUST,
Plaintiff Below, Petitioner,

v.

DUNCAN HOMES, LLC,
Defendant/Third-Party Plaintiff Below, Respondent,

and

CONRAD LEGAL CORPORATION,
Third-Party Defendant Below, Respondent.

_____

Appeal from the Circuit Court of Berkeley County
Honorable Bridget Cohee, Judge
Civil Action No. CC-02-2023-C-15

AFFIRMED, in part, REVERSED, in part, and REMANDED
_____

Submitted:  September 3, 2025
Filed:  November 13, 2025

Lakyn Cecil, Esq.
Samuel I. White, P.C.
Morgantown, West Virginia
Counsel for Petitioner

J. Peter Glaws IV, Esq.
Carr Maloney P.C.
Washington, D.C.
Counsel for Respondent, Conrad Legal
Corporation

Eric S. Black, Esq.
Berkeley Springs, West Virginia
Counsel for Respondent, Duncan Homes,
LLC

JUDGE WHITE delivered the Opinion of the Court.

WHITE, JUDGE:

Petitioner U.S. Bank Trust National Association, as Trustee of LB-Ranch Series V Trust ("U.S. Bank") appeals the August 23, 2024, order from the Circuit Court of Berkeley County which denied its motion for summary judgment and granted the summary judgment motions filed by Respondent Duncan Homes, LLC ("Duncan Homes"), and Respondent Conrad Legal Corporation ("CLC").

## I.   FACTUAL AND PROCEDURAL HISTORY

This case involves an action to set aside a tax sale deed issued after a delinquent tax sale held on August 29, 2019 ("2019 Tax Sale"). However, the circuit court determined that the events surrounding a prior tax sale for the subject property, which was held on or about November 14, 2012 ("2012 Tax Sale"), were dispositive of the present case. The facts of record are as follows:

## A.  2012 Tax Sale

In June of 2000, Richard S. Palmer owned the subject property located in Martinsburg, West Virginia. He obtained a loan from Associates Financial Services of America, Inc. ("Associates Financial") which was secured by a Deed of Trust recorded against the property on June 21, 2000. According to the Deed of Trust, Associates Financial had the right, but not the duty, to pay any taxes or assessments on the subject property if they were not paid when due by Mr. Palmer. After this loan, taxes on the property were not

1

paid, resulting in RAI Custodian WV TL, LLC ("RAI"), purchasing the delinquent tax lien at the 2012 Tax Sale. RAI attempted to serve a notice to redeem on Associates Financial by certified mail, regular mail, and publication, but the notice was returned.[1] Associates Financial failed to redeem its interest, and a tax sale deed was issued vesting sole ownership of the property with RAI on April 1, 2014 ("RAI Deed"). This tax sale deed was recorded on April 21, 2014.

On June 12, 2014, RAI quitclaimed the property to American Pride Properties, LLC ("American Pride"), which recorded the conveyance on June 30, 2014. American Pride quitclaimed the property back to Mr. Palmer on July 14, 2016. The quitclaim deed returning the property to Mr. Palmer was recorded on August 9, 2016.

On September 22, 2016, Associates Financial[2] assigned its June 21, 2000, Deed of Trust to CitiFinancial, Inc., which immediately assigned the interest to Bayview Loan Servicing, LLC ("Bayview"). Both assignments were recorded on October 4, 2016.

---

[1] The certified letter to Associates Services [sic] came back "RETURN TO SENDER ATTEMPTED-NOT KNOWN UNABLE TO FORWARD."

[2] At the time of this conveyance, Associates Financial was known as Associates First Capital Corporation. We will use the designation of Associates Financial for clarity.

## B. 2019 Tax Sale

Following American Pride's 2016 conveyance to Mr. Palmer, the taxes on the property again fell into delinquency. Duncan Homes purchased the delinquent tax lien at the 2019 Tax Sale. Duncan Homes retained CLC to conduct a title search on the property and prepare the notice to redeem form for the state auditor. Through its title search, CLC determined that Mr. Palmer and Associates Financial were among the persons and entities entitled to receive the notice to redeem, but Bayview was not included on the notice to redeem form. No person or entity receiving notice redeemed the property. Thereafter, Duncan Homes was vested with ownership of the property by tax sale deed recorded on May 15, 2020.

According to U.S. Bank, shortly after the 2019 Tax Sale, Bayview and Mr. Palmer entered into a loan modification agreement on March 1, 2020. In connection with the modification agreement, Bayview conducted a title search for the property in October of 2019.[3] On July 14, 2022, Bayview[4] assigned its interest to Nationstar Mortgage, LLC ("Nationstar") which recorded the assignment on July 15, 2022.

---

[3] The record does not indicate whether this 2019 title search resulted in discovery of the 2012 Tax Sale and 2014 tax deed. However, petitioner's counsel indicated during oral argument that when Mr. Palmer stopped making payments pursuant to the modified loan agreement in 2020, his loan was referred to foreclosure counsel, who discovered that there was a tax sale deed, and that discovery resulted in the filing of this action to quiet title.

[4] At the time of the assignment, Bayview had changed its name to Community Loan Servicing. For clarity we will continue to refer to this entity as Bayview.

## C. Circuit Court Decision

On January 13, 2023, Nationstar initiated this action to set aside the deed issued after the 2019 Tax Sale. Duncan Homes was one of the named defendants. In response, Duncan Homes filed its answer and a counterclaim against Nationstar, requesting the circuit court declare it the fee simple and sole owner of the subject property. Later, Duncan Homes filed an amended answer, which added a third-party complaint against CLC, alleging legal malpractice in connection with its earlier title search and failure to include Bayview on the notice to redeem form.

On October 10, 2023, the circuit court entered an order granting Nationstar's motion to substitute U.S. Bank as its successor in interest. Following the close of discovery, the parties filed cross motions for summary judgment on April 12, 2024. Of note, evidence of the 2012 Tax Sale was not disclosed during discovery. Nonetheless, in support of its motion for summary judgment, Duncan Homes contended that any interest Associates Financial held in the property was extinguished when it failed to redeem its interest following the 2012 Tax Sale, and the RAI Deed was issued. Thus, Duncan Homes contended that no successor in interest to Associates Financial's chain of title, such as Bayview or U.S. Bank, held any title to the property. CLC made a similar argument in support of its motion for summary judgment. CLC contended it had not negligently performed the title search or prepared the notice to redeem form because the 2012 Tax Sale extinguished Associates Financial's interest, and therefore, Bayview had no legal interest in the property and was not entitled to notice. In response, U.S. Bank filed a motion in

4

limine and a motion to strike, seeking to exclude evidence of the 2012 Tax Sale, contending that the late disclosure of the 2012 Tax Sale and deed was prejudicial, and deprived U.S. Bank of the opportunity to conduct discovery to contradict Duncan Homes' contentions.

The circuit court held a hearing on May 17, 2024, with respect to the parties' cross motions for summary judgment. At this hearing, the court specifically heard argument regarding the property's chain of title and need for expert testimony. Finding that an additional hearing was necessary to address U.S. Bank's motions regarding the 2012 Tax Sale, the circuit court set the matter for hearing on May 30, 2024. At that hearing, the circuit court did not hear argument regarding U.S. Bank's motions in limine or motion to strike. However, the court did inform the parties it was denying U.S. Bank's motion for summary judgment.

The circuit court memorialized its summary judgment ruling by order dated August 23, 2024. In that order, the circuit court determined that U.S. Bank's claims failed because it held no legal interest or marketable title to the property due to the 2012 Tax Sale. Specifically, the court found by virtue of the 2016 Assignments, Associates Financial was a predecessor in title to Bayview and U.S. Bank; but when Associates Financial failed to redeem the property, any legal interest within U.S. Bank's chain of title was extinguished by the RAI Deed. The circuit court also found that pursuant to West Virginia Code § 11A-

5

4-4(a) (1994),[5] U.S. Bank was precluded from challenging the validity of the 2012 Tax Sale and the notice provided to Associates Financial because more than three years had elapsed since the issuance of the RAI Deed.

The circuit court concluded that because Bayview never held legal title to the property, it was not among the entities that Duncan Homes was required to provide with a notice of the 2019 Tax Sale and, thus, U.S. Bank, as a successor in interest, lacked standing to challenge the sale. The circuit court's order then granted summary judgment to Duncan Homes and CLC. This appeal followed.

## II. STANDARD OF REVIEW

In West Virginia, it is well established that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In conducting a de novo review, this Court applies the same standard for granting summary judgment that a circuit court must apply, and that standard states, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *United Bank, Inc. v. Blosser*, 218 W. Va. 378, 383, 624 S.E.2d

---

[5] Effective June 10, 2022, West Virginia Code § 11A-4-4(a) was amended to impose a two-year limitations period. However, the former version imposed a three-year limitations period, and it was the controlling limitations period in effect at the time of the 2012 Tax Sale and issuance of the RAI Deed.

815, 820 (2005) (quoting Syl. Pt. 2, *Painter*, 192 W. Va. at 190, 451 S.E.2d at 756).

"Summary judgment is appropriate if, from the totality of the evidence presented . . . the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

### III.  DISCUSSION

Petitioner raises various assignments of error, but we find the following issue to be dispositive: whether the original Deed of Trust, and the subsequent assignments thereof, made Bayview a party in interest entitled to notice of the 2019 Tax Sale and its right of redemption because they show that Bayview had been authorized to make tax payments by Mr. Palmer.[6] Because we find that Bayview was entitled to pay taxes upon the subject property, it was entitled to notice, and therefore we reverse the order of the circuit court.

It has long been recognized that when a tax sale deed is duly obtained and recorded by the purchaser of a tax sale lien, the purchaser is vested with all interest and

---

[6] Because we find this issue to be dispositive, we do not address whether the circuit court erred in considering the 2012 Tax Sale and 2014 tax deed when they had not been disclosed in discovery, or whether the quitclaim deed reconveying the subject property to Mr. Palmer effectively rescinded the 2012 Tax Sale and reinstated Associates Financial's lien.

7

title to the subject property. For example, Syllabus Point 2 of *Summers v. Kanawha County*, 26 W. Va. 159 (1885), holds that:

> If at the time of such sale the land sold be under a mortgage or deed of trust, or if there be any other lien or incumbrance thereon, and such mortgagee, trustee, *cestui que trust,* lienor or incumbrancer shall fail to redeem the same within the time prescribed by law, then all the right, title and interest of such mortgagee, trustee, *cestui que trust,* lienor or incumbrancer, shall pass to and be vested in the purchaser at such tax-sale, and his title to the premises shall in no way be affected or impaired by such mortgage, deed of trust, lien or incumbrance.

This legal principle is also recognized by West Virginia Code § 11A-3-62(a) (1994), which states:

> Whenever the purchaser of any tax lien on any real estate sold at a tax sale, his heirs or assigns, shall have obtained a deed for such real estate from the deputy commissioner or from a commissioner appointed to make the deed, he or they shall thereby acquire all such right, title and interest, in and to the real estate, as was, at the time of the execution and delivery of the deed, vested in or held by any person who was entitled to redeem, unless such person is one who, being required by law to have his interest separately assessed and taxed, has done so and has paid all the taxes due thereon, or unless the rights of such person are expressly saved by the provisions of section forty-nine of this article or section two, three, four or six, article four of this chapter.
>
> The tax deed shall be conclusive evidence of the acquisition of such title. If the property was sold for nonpayment of taxes, the title so acquired shall relate back to the first day of July of the year in which the taxes, for nonpayment of which the real estate was sold, were assessed. If the property was sold for nonentry

8

pursuant to section thirteen of this article, or escheated to the state, or is waste and unappropriated property, the title shall relate back to the date of sale.[7]

To obtain the benefits of a tax deed, however, due process requires the purchaser to provide proper notice of the tax sale and the right to redeem to every interested party who can be readily identified from public records or otherwise. *Archuleta v. US Liens, LLC*, 240 W. Va. 519, 521, 813 S.E.2d 761, 763 (2018).

> As a prerequisite to receiving a deed to property sold for delinquent taxes, W. Va. Code § 11A-3-19 requires the tax purchaser to "[p]repare a list of those to be served with notice to redeem and request the State Auditor to prepare and serve the notice as provided in sections twenty-one [§ 11A-3-21] and twenty-two [§ 11A-3-22] of this article." …. The statute also makes clear that, "*[i]f the purchaser fails to meet these requirements, he or she shall lose all the benefits of his or her purchase*." (Emphasis added).

*Id*. at 522, 813 S.E.2d at 764 (footnotes omitted). Failure to comply with the mandatory notice requirements "is a jurisdictional defect not subject to curative measures." *Id.*

---

[7] West Virginia Code § 11A-3-30 (2010), which was repealed in 2022, similarly provided that the purchaser of a tax lien, on receipt of the tax deed, "shall acquire all right, title and interest, in and to the real estate, as was, at the time of the execution and delivery of the deed, vested in or held by any person who was entitled to redeem." W. Va. Code § 11A-3-30 (2010).

Thus, following the 2019 Tax Sale, Duncan Homes was required by West Virginia Code § 11A-3-19 (2018)[8] to prepare a list of those persons and entities entitled to notice of their right to redeem. West Virginia Code 11A-3-23(a) (2019) provided that "the owner of, or any other person who was entitled to pay the taxes on, any real estate for which a tax lien on the real estate was purchased by an individual [could] redeem at any time before a tax deed [was] issued for the real estate." As the Supreme Court of Appeals of West Virginia noted in Syllabus Point 4 of *Rollyson v. Jordan*, 205 W. Va. 368, 518 S.E.2d 372 (1999):

> The persons entitled to notice to redeem . . . are those persons who are permitted to redeem the real property subject to a tax lien or liens, as contemplated by [West Virginia Code] § 11A–3–23(a) . . . which persons include "the owner" of such property and "any other person who was entitled to pay the taxes" thereon.

Under the undisputed facts of this case, Bayview was an interested party entitled to notice of the tax sale and its right to redemption.

In June of 2000, Mr. Palmer owned the subject property located in Martinsburg, West Virginia. He obtained a loan from Associates Financial secured by a deed of trust that was recorded on June 21, 2000. This deed of trust provided that Associates

---

[8] We acknowledge that this statute, as amended, was subsequently repealed by the Legislature, effective June 10, 2022. However, it was in effect at the time that events surrounding this litigation arose.

Financial had the right, but not the duty, to pay any taxes or assessments on the property if they were not paid when due by Mr. Palmer.

According to Petitioner, public tax records and payment history reflect that it and its predecessors paid taxes on the subject property, but the tax office mistakenly applied them to another property in Martinsburg owned by Mr. Palmer.[9] A person may authorize a third party to pay his or her taxes, and under those circumstances, the lender would qualify as someone who was entitled to pay taxes. In determining that Bayview was not a party in interest at the time of the 2019 Tax Sale, the circuit court's order simply stated that Bayview was not entitled to pay taxes on the property at the time of the 2019 Tax Sale. The circuit court, however, failed to address whether Bayview was entitled to pay taxes because it had been authorized to do so by Mr. Palmer in the loan agreements he signed.[10] *See Rollyson v. Jordan*, 205 W. Va. 368, 374-76, 518 S.E.2d 372, 376-80 (1999) (note holders were entitled to notice of right to redeem where the deed of trust securing their note

---

[9] Instead of applying the payments to the subject property located at 264 Dale Earnhardt Lane, the tax office allegedly credited the payments to the taxes owing on another property owned by Mr. Palmer located at 209 Dale Earnhardt Lane.

[10] We note in passing that West Virginia Code § 11A-1-9 (1941) provides in pertinent part that "[o]ne who pays taxes on the interest of any other person shall be subrogated to the lien of the State upon such interest." This section also provides, however, that "[h]e shall lose his right to the lien, however, unless within thirty days after payment he shall file with the clerk of the county court his claim in writing against the owner of such interest, together with the tax receipt or a duplicate thereof." There is no indication in the record that petitioner filed a written claim with the clerk so as to trigger application of this section.

11

provided that they might "at their option" pay taxes, charges and assessments). Persons entitled to notice of the right to redeem include not only the owners of property but "any other person who was entitled to pay the taxes thereon." *Id.* at 370, 518 S.E.2d at 374, Syl. Pt. 4.[11]

The 2014 tax deed extinguished only "such right, title and interest, in and to the real estate, as was, at the time of the execution and delivery of the deed, vested in or held by any person who was entitled to redeem." W. Va. Code § 11A-3-62. The contractual right to pay taxes is not "a right, title and interest in and to the real estate." Thus, that right was not extinguished by the 2014 tax deed. Associates Financial continued to have the right to pay taxes on the property pursuant to its original deed of trust even though its lien had been extinguished. The 2016 assignment of the Associates Financial deed of trust put the public on notice that the right to pay taxes had been assigned to Bayview. *See Mike Ross, Inc. v. Bergdorf*, No. 16-1046, 2017 WL 4712793, at *4 (W. Va. Oct. 20, 2017) (memorandum decision) ("[g]enerally whatever is sufficient on the face of the record of title to land to direct a purchaser's attention to the prior rights and equities of third persons will put him upon an inquiry and will amount to notice to him. He is bound to take notice of everything disclosed by the record.") (quoting Syl. Pt. 4, *Simmons v. Simmons*, 85 W. Va. 25, 100 S.E. 743 (1919)). Thus, Bayview, Petitioner's predecessor in interest, was

---

[11] We note that redemption statutes must be strictly construed against the purchaser. *Duncan Homes, LLC v. Stallard*, 25-ICA-3, 2025 WL 2490384, at *4 (W. Va. Ct. App. Aug. 29, 2025) (memorandum decision).

entitled to notice of the 2019 Tax Sale and its right to redeem. Petitioner was entitled to summary judgment against Duncan Homes on this issue, and Duncan Homes' motion for summary judgment on its counterclaim should have been denied.

On appeal, Petitioner requests this Court to reverse the circuit court's ruling granting summary judgment in favor of CLC, as well as its ruling granting summary judgment in favor of Duncan Homes. CLC, however, raises two issues which are unique to it, arguing that Petitioner lacked standing to appeal against its favorable ruling because Petitioner was not its client and did not file any claim against CLC below, and that summary judgment was properly granted in its favor because Duncan Homes, the party who raised a crossclaim against CLC, did not produce an expert witness to testify that CLC violated the applicable standard of care. Neither Petitioner nor Duncan Homes has addressed these dispositive issues on appeal. Accordingly, we do not disturb the judgment of the circuit court granting summary judgment to CLC. *See Leadmine Comty. Church v. W. Va. Ann. Conf. of United Methodist Church*, No. 24-ICA-475, 2025 WL 2240416, at *3 (W. Va. Ct. App. Aug. 6, 2025) (memorandum decision).

## IV. CONCLUSION

Accordingly, we reverse the August 23, 2024, order of the Circuit Court of Berkeley County granting summary judgment to Duncan Homes against U.S. Bank on the issue of whether U.S. Bank was entitled to receive notice of the 2019 Tax Sale, and remand

13

the case back to the circuit court for further proceedings consistent with this opinion. We affirm the order to the extent it granted summary judgment to CLC.

Affirmed in part, Reversed in part, and Remanded.